Good morning, Your Honors. An issue in the instant case is whether the departure bar applies to an individual who has voluntarily left the United States and seeks to reopen his removal proceedings. Well, isn't it during the proceedings? In this case, yes, Your Honor. He did depart during the removal proceedings. So that the motion to reopen was timely, if not barred by the departure bar. It was timely as to the decision of the immigration judge, and it was denied on the issue of the departure bar. So if I go right over here then, this is the toughest question for me, Lynn V. Gonzalez. In Lynn V. Gonzalez, we considered this case, we didn't consider this exact case, but in the middle of doing it, we said, the government argues that under the regulation, a motion to reopen cannot be made by an alien who was in proceedings after the alien's departure. We disagree. The regulation is phrased in the present tense. And so by its terms, applies only to a person who departs the United States while he or she is the subject of removal proceedings. That seems to be exactly this case. That's Lynn. Then if I turn over to Singh. In Singh, the court said, this is us. The board's interpretation forgets a fundamental premise. The scope of this regulation is clearly limited to persons who depart after the removal proceedings have already been commenced, which is exactly what happened here. So I have two precedents, Singh and Lynn, and I guess I just say, well, I think we're over. Well, Your Honor, in this case, I believe that the salient timing on this is as to the decision of the immigration judge, and that the motion to reopen is timely as to that decision. Well, but just a second, just a second. Is this during the proceedings or isn't it? Well, the proceedings were technically concluded when the immigration judge issued the decision, although the departure occurred during the removal proceedings. Well, that's the question. Did it happen during the removal proceedings or not? And I appreciate that the BIA has always taken the position this applies in every event, whether it's before, after, during, it doesn't matter. And we've said, baloney, that isn't the way it is. We say, you can say what you want about what you want to say, but for before and after, we're not going to go with that regulation. But in these cases, we say, if it's during, we're going to apply the regulation. Although, Your Honor, I would argue that the court's holding in Coit and Reyes-Torres does allow for the fact that voluntary removal does not necessarily mean that you've... That doesn't have anything to do with this question because voluntary removal, after it's over, we're not going to apply the regulation. But during, right here. So go back to those two cases, are those cases distinguishable? Coit and Reyes-Torres... We sometimes say things in cases that aren't required for the holding. So tell me if that language was required for the holding in those cases. I believe that the relevant language in the Coit and Reyes-Torres holdings is... No, he's asking about Lynn and... We're talking about Lynn and we're talking about Singh. So as I read Lynn, tell me if I'm wrong, Lynn is somebody who departed after the proceedings concluded, right? Did your client depart after the proceedings concluded? My client departed during the proceedings, Your Honor. Okay. So Lynn involved somebody who departed after the proceedings had concluded. Singh involved somebody who departed before the proceedings began, right? Right. So is there a relevant difference between your client and the people in those cases? Put aside whatever language we used, is there a difference? Well, yes, Your Honor. My client did depart during the removal proceedings, which puts him in neither case. Okay, but why is that important for purposes of the regulation or the statute? I believe it's important because it puts him in a different position from Singh and it also puts him in... He departed during the removal proceedings after an initial decision had been made during the proceedings and prior to the actual final order. So it did put him in a position where he had substantial issues and things that had occurred during the removal proceedings that might cause him to want to file a motion to... I mean, I must tell you, I... Let me start... Go ahead, Judge Smith. I want to stop him just a little. It seems to me that the only reason you could buy what my colleague is really questioning you about is to say that what we said in Lynn and Singh is pure dicta. Is that what you're saying? I mean, there's no question that the BIA decision that was made in this particular case of Armand R. S. Mendez says what it says. And there's no question that we had said what was said in Lynn and what was said in Singh before that. But thereafter, we continue to follow Lynn and we continue to follow Singh. We've got untold dispositions that say we're going to follow those cases. So I'm suggesting, based on what I can see here, we can't really say it's dicta. Your Honor, I would also posit that we are in a distinguishable position from Lynn and that in this position where we have an individual who departed not before removal proceedings commenced, but during the pendency of the removal proceedings after substantial issues that occurred before the court, that now we can look to the reasoning in Reyes, Torres, and Coit and apply that to that situation here. But the Reyes, Torres, and Coit really only address things that Lynn and Singh would allow to be addressed. It's only in the cases that come after Reyes, Torres, and Coit where we come forth with our decisions and they're all unpublished, but we just rely on Lynn and we rely on Singh and we say, well, that's what we said and we're following it. No published decisions rejecting your position, right? Yes, Your Honor. Okay. So let's get back to the question. Let's assume Judge Smith is right, that we've said this before. And your case, you say, is different. It's different factually. I can't figure out the reason for the regulation at all, so I'll have to ask your opponent about that. But tell me why it's different legally. It's different legally because in the instant case, the legal right to reopen proceedings, to re-examine proceedings, in some ways is triggered by what occurs during the pendency of those proceedings. Because my client had the opportunity to begin his removal proceedings, have decisions made in the context of those proceedings, he is in a different position than someone who hasn't even begun that process. Right. And I understand the distinction from Singh. What about the distinction from Lynn? For somebody who had left after the proceedings had concluded, why is your client in a different position than the person in Lynn? My client is in a different position. I know factually why, but tell me legally why. Legally, my client is in a different position from the individual in Lynn because he has the opportunity now, if we were to apply the Reyes-Torres reasoning, he would then have the opportunity to have the prior decisions re-examined before the court. Well, but that's a conclusion, I'm sympathetic to your position, but that's a conclusion rather than a reason, right? It's just that if he were to win, he could attack, he could attack. Why is he different? Why is he situated different legally? In other words, if the person in Lynn had been allowed to file the motion despite the departure ban, he would have been allowed to attack the decisions made there too. Why should we distinguish between your case and Lynn? We should distinguish between my case and Lynn because in this case and if the court were to make a present decision in this instance, we would be in a position where we would be in a position to be rewarded for essential compliance with the law as opposed to individuals who are forcibly removed from the United States. For example, the voluntary departure rule allows for a 60-day time period following the conclusion of removal proceedings. The motion to reopen period is 90 days. If an individual complies with the voluntary departure that they've agreed to, instead of remaining here beyond what they are allowed to do and being forcibly apprehended, then they're actually being disincentivized to do so. Yeah, I'm still trying to, and I'm thinking for the moment that we haven't decided this case already. So if we have, then Judge Smith is, you know, Judge Smith's point is well taken. But if we haven't decided it and we decided in Lynn you should be subject to the departure bar, I'm still trying to figure out why your client is more worthy of getting out of the departure bar without regard to the facts of the case. Why somebody who leaves during proceedings should get more leeway than somebody who leaves after proceedings. And you still haven't helped me there. I need you to think about, and maybe when you get back up you can tell us this, think about some reason that distinguishes the situation of your client from the situation in Lynn. In Lynn, did we consider the validity of the departure bar, or do we say that it didn't apply? All right, think about that too. That one too. Okay. Your Honors, Ann Barnum for the respondent, Attorney General Eric Holder, Jr. Could you start with our prior cases? Have we ever considered the validity of the departure bar as measured against Congress's provision that you have a certain period to reopen? As other circuits have. We have a whole group of circuit decisions that say the departure bar conflicts with the statute. We've looked at it in a very narrow circumstance, but have we considered it generally? We haven't. According to my understanding of your case law, it has not been considered by this Court in a case such as the one at hand. Not only the facts, but have we looked at whether the departure bar is a valid exercise of the Bureau's regulatory power, given what other circuits have said is a conflicting statutory directive? I don't believe the Court has. Is that an open issue in this circuit? Yes, I believe so. So you don't think Lynn and Singh suggest that we have considered this particular regulation and have determined it only applies while you're during the proceedings? I mean, I read you the language we said there, so you're on the point for the government. If you say no, then guess what? I got a chance to look at it again. Otherwise, I got to have some en banc authority to do anything. Well, let me ask the question differently. No, we got you there. So the question is that I asked was slightly different than the one Judge Smith asked, and that's why I want to make sure that we're on the same page. Let's assume that Lynn and Singh says this bar does apply during proceedings. Have we ever looked at whether or not, as so construed, that would violate, that would conflict with Congress's direction that there be a certain period of time in which somebody can file a motion to reopen? I think your answer was no. We haven't really looked at that, have we? I believe that's correct. Okay. So let's get back to the main question in this case, is why do you think, if this applies to Mr. Tuer, or Ms. Tuer, what is the, why is it, why doesn't it conflict with Congress's direction that there be a certain time in which people can file motions to reopen? I think Congress goes further, I'll even help my colleague, Congress goes further and says everybody ought to have at least one motion to reopen. And there's a certain period of time in which to file it, and the BIA has said, well, not so fast. There are some people we don't want filing motions to reopen. Why is that valid? That's valid, particularly in this case. In the cases that the court has looked at before, the alien state in the United States, or non-citizen state in the United States, to fight for the rights that they are given during their proceedings. Why does it make a difference that somebody leaves the United States but attempts to fight from the outside? Well, he could have, but he didn't. But why does it make a difference in policy? That's the question. Why should it make a difference? Because, to be fair, if in fact we haven't addressed these questions, I think the big question that the government needs to answer is, why does it make a difference whether he's in or out of the country, whether he should file a motion to reopen, when Congress has exactly said, quote, unquote, everybody gets one? Yes. And that is assuming that people fight for their rights during their proceedings. Nobody says that in the statute. It says everybody gets one. You, BIA, et cetera, have interpreted that to mean, yeah, I got to do it, you can't do it during the proceedings, you can't do it after the proceedings or before the proceedings, if you get out of the country. That's not in the statute. That's just your idea of a good time, which we give some deference to, but what we've done is take both sides. We've said, oh, that can't exist prior to the proceedings, and it can't exist after the proceedings, but during the proceedings, okay, we'll go along, just that we haven't had a case dead on. But we've said why we were doing what we were doing before. Yes. In the notice to appear that Mr. Torr was issued, he was required and had a duty in order to pursue his rights and his proceedings, he also had a duty to keep the immigration court apprised of his whereabouts, and if he changed his address within five days, he was to notify the immigration court. He did not do that. He simply left the country and sat on his rights, and then comes back with a motion to reopen, which meets none of the qualifications for a motion to reopen, and says, United States government, I got you. Well, you could deny the motion. Nobody doubts the ability of the board to deny the motion as frivolous or unfounded. The question is whether he's barred from filing it, right? Yes. So why should he be barred from filing it? Well, the immigration judge found that even if she were, and if the court would have wanted to go that way, to say that he had the right to file it, that doesn't mean that the immigration court has to consider it. Even if she had jurisdiction to consider it, she would not in this case, because this person is only asking to be relieved of his original charge. I think we're confusing, at least in my mind, two concepts here. One is whether he is barred by the regulation from filing a motion to reopen. And I think that's what today's case is about. I don't see much that would help if the motion to reopen were considered by the immigration judge or the BIA. They would almost surely turn it down, would they not? But that's a merits decision, not a departure bar decision. So why should we bar people in this situation, without looking at the merits of his case, from even filing a motion to reopen? Well, this has been the policy rule of the United States since 1952. And I think the rule is rather clear. Our question is, given that Congress, my question is at least, given that Congress said, everybody gets one motion to reopen and they get 90 days to file it. How does the BIA get away with saying, but there's a group of people we don't want to be able to do that. Why? Doesn't that conflict with the statute? That's what every other circuit to consider it has said. I realize that some circuits have found that. No circuits found your way. Right. Other than the Fifth, I believe the Fifth may have. The Fifth. There is one. You're right. The Fifth said that any alien who departed during was barred. That's the only circuit. But without regard to what our sister circuits have done, what's the, I'm still searching for the policy reason. Why isn't this just an irrational distinction? We let people, if you look at our prior cases, we let people who have, you know, in various proceedings, we deported before the 90 day period. They can file a motion. Yes. There have been certain cases that have equities like Coit and Reyes Torres. And even aside from those, the immigration judge made clear in her decision, which the board affirmed, that we want to get due process to everyone who is here. No, I don't doubt that everybody acted in good faith here. They were acting under an existing regulation. My question, our question today, and I think we're just, we're missing each other on it is, how does that regulation, assuming that we're free to consider it, get past Judge Smith's questions, how does that comply with a statutory directive that there be 90 days in which to file a motion to reopen? In effect, if Congress told us that we, you know, the time for appeal was 30 days and our court said, if you file it after 15 days, we're not going to take it, Supreme Court would reverse us. So my question is, why hasn't Congress spoken to you on this point? Well, I believe Congress has spoken in that it, in passing the ARERA, one of its main concerns was multiple filings of motions to reopen. Some people have filed five, six, seven motions to reopen after proceedings are over. And the ARERA, one of the policy reasons for it was to give finality. Was to limit you to one motion to reopen to be filed within 90 days of the effected order. Why isn't that this case? This is not a multiple motion to reopen, it's a first one. No, that is correct. And if the court were to want to strike down the departure bar in this circuit, which I believe is the Attorney General's rule for now going on 75 years, I think that still on the merits of this case, this is a very poor case. I happen to agree with you, but I'm not sure, the merits aren't before us, because... I'm not sure we can get to the merits. I mean, I look very hard because it seemed to me that the IJ made two separate decisions and it seemed like the BIA then said, I affirm on the facts herein. So then it looked to me like, well, maybe then I've got both I can look at, but the BIA really didn't talk about the alternative ruling. The BIA only talked about the ruling that had to do with jurisdiction. And so it makes it a little difficult for me to say they were really beating up on the alternative, doesn't it? Well, they did use the exact words that they affirmed for the reasons stated in the decision. So I do think, absolutely, you can look at the immigration judge's decision, whole decision. Well, they said the immigration judge lacked jurisdiction to entertain the motion for reconsideration and we similarly lacked jurisdiction to entertain his appeal and motion for remand. They did say that. That's not a merits denial, that's a jurisdictional denial, isn't it? No, she said that even if she did have jurisdiction, she would... Right, and then the BIA said, we lack jurisdiction. Yes. They do affirm the reasons stated in the decision and the Attorney General has been tasked with rulemaking in our immigration cases, which I contend are completely different from some of the circuits that have gone to other Supreme Court cases like Union Pacific to decide that in cases of non-citizens, the departure bar is out. The rulemaking here was done before AREA was passed, correct? Yes. So the question that I'm struggling with in this case is whether the subsequent statute undid the rule. In other words, this is not our normal sort of Chevron case where you're promulgating a rule pursuant to a statute and we go through our deference. Here we have a rule and then we have a subsequent statute, which may be inconsistent. That's what I'm struggling with. That's not a question. I just wanted to focus it for you. I guess my worry, if in fact that's the approach taken, is the government argue that we have to send it back to the BIA to make the first determination in that situation? That is correct, Your Honor. But my worry, my only worry about that, to be fair, is the BIA, even given what happened here, seems to continue to rely on Armendariz-Mendez and if it is as Judge Hurwitz suggests that the statute has been changed since then, it would have seemed to me the BIA would have come to the conclusion we need to think it through again, given the change in statute. So I guess I'm saying if all I'm going to get is Armendariz-Mendez again, why am I going to send it back? Because I realize the regular procedure would let you have the first shot at it, but if all I'm going to get is what was there before, I'm a little worried. I would add to that that at first place it's purely a legal question, which I'm not sure that you would need it for a shot at, but you've had a lot of shots. About five other circuits have ruled that way and that hasn't influenced what the BIA thinks. Why? Because one more circuit says what the others have. Should we ask you whether you still mean it? Well, you have the situation here where the petitioner is really not asking for anything other than to go back and undo his charge, and in that case you absolutely are saying there's no finality at all. Actually, what we're saying to the BIA, not to the immigration judge who said, I got two reasons for turning it down. One, you got nothing. And second, I don't have jurisdiction. And we're saying to the BIA, you can review the immigration judge's order. There is jurisdiction. And if you want to tell us that TOR's got nothing, that's fine with us. That's your expertise. We're not saying you can file over and over again. We're just saying you have the jurisdiction, BIA, to review the immigration judge's denial of this motion to reopen. Okay. I think we've explored this enough for time. I think so, too. Thank you, counsel. Thank you. I'll be quiet. I keep my mouth shut, but she doesn't mind. There has been a great deal of focus here on the merits and the equities of the case. And the important issue that is before this court is whether or not there is actual jurisdiction to consider it. TOR would argue that the petition be sent back to the BIA for consideration on the merits and that he's not procedurally barred. He's not procedurally barred because he is entitled to that one motion to reopen guaranteed by Congress. And there does seem to be a bit of a conflict between that and the regulation. However, that conflict has been resolved by this court and by other circuits in allowing individuals who have departed the United States to file the motions to reopen. And as a public policy matter, were we to limit this right to individuals who were forcibly physically removed as opposed to individuals who left of their own accord or in compliance with their voluntary departure orders, we would be essentially rewarding people who we had to expand resources to chase down and punishing individuals who did essentially what they were supposed to do. Thank you, counsel. The case is argued to be submitted.
judges: Reinhardt, Smith, Hurwitz